

Keith A. Jones
TEL: (215) 965-1379
kjones@panitchlaw.com

June 2, 2025

The Honorable Sherry R. Fallon
J. Caleb Boggs Federal Building
844 N. King Street, Room 6100
Wilmington, DE 19801-3555

   Re:   *Pierre Fabre Medicament SAS, et al. v. Rubicon Research Private Limited*
       C.A. No. 1:24-cv-00811-JLH-SRF (D. Del.)

Dear Judge Fallon:

We write on behalf of Plaintiffs pursuant to the Court's May 19 discovery dispute Order (D.I. 53).  We respectfully request the Court enter the attached Order compelling full responses to Interrogatory 4 and Requests for Admission ("RFAs") 5-6, 8, 10, 14-17, 21, 23-27, 30, and 32-34.[1]

This is a patent infringement action arising under the Hatch-Waxman framework.  Plaintiffs own two patents covering methods for using an old drug (e.g., propranolol, a type of beta blocker) in a way that was not previously known: to treat infantile hemangioma.  See generally D.I. 1.  Defendant Rubicon initiated this dispute by submitting an Abbreviated New Drug Application with a Paragraph IV assertion that Plaintiffs' patents are invalid and/or not infringed by its proposed product, and by sending notice of the same to Plaintiffs.  (Exhibit C). Plaintiffs then filed a Complaint for infringement.  D.I. 1.

Rubicon's Answer includes counterclaims for declaratory judgment of noninfringement of every claim of both asserted patents.  (D.I. 14 at 20-22).  Despite that, Rubicon has utterly refused to take any position on infringement for almost this entire case.  In so doing, it failed to give any substantive response to almost every discovery request issued so far, only finally giving the slightest of responses after Plaintiffs sought the Court's assistance.  Despite those supplements, Rubicon's responses remain deficient.

Based on Rubicon's pleading, Plaintiffs issued interrogatory 2 seeking noninfringement contentions, interrogatory 3 seeking differences between Rubicon's proposed product and Plaintiffs' FDA-licensed product, and interrogatory 4 seeking the reasons Rubicon sought to gain FDA approval of its product.[2]  (*See* Exhibit A, Rubicon's Supplemental Objections and

---

[1] Plaintiffs' Motion (D.I. 52) also included interrogatories 2 and 3.  Rubicon finally supplemented its responses to those interrogatories after the Motion was filed (on May 23 – *see* D.I. 56).  The following discussion of them is provided for context, since all the interrogatories and RFAs discussed here are related.  The Motion also included RFAs 7, 9, 11, 12, 13, 22, 29. Rubicon supplemented these responses at 4:54 PM on May 30, 2025 (D.I. 58) – effectively two business hours before this submission was due.

[2] Though not the subject of this motion, Plaintiffs also issued interrogatory 7 testing the factual basis for Rubicon's counterclaims.  Rule 11 requires a good faith basis for each claim at the time it was filed, meaning that Rubicon must have had a reason for believing it did not infringe at the time it filed its Counterclaims.

Hon. Sherry R. Fallon
June 2, 2025
Page 2

Responses to First Interrogatories). Plaintiffs also issued a set of RFAs seeking admissions on the aspects of infringement that may not be in dispute. (*See* Exhibit B, Rubicon's Supplemental Objections and Responses to First Requests for Admission).

Rubicon's initial response to interrogatory 2 deflected to its Notice Letter (attached as Exhibit C). But that letter only claims noninfringement as to some of the claims of the patents. Plaintiffs pressed this issue by letter on December 4, 2024 (Exhibit D). Rubicon ignored that letter. Rubicon also ignored follow-up emails on December 18 and January 23. It finally responded after January 29, when Plaintiffs indicated an intent to move to compel. Surprisingly, Rubicon suggested a stipulation of infringement (despite pleading noninfringement of all claims) and said it would supplement its interrogatory responses shortly after. (*See* Exhibit E, email chain between counsel). But Rubicon then ignored Plaintiffs' request to provide the suggested stipulation. Plaintiffs then prepared a draft stipulation of noninfringement for Rubicon's review on February 24. Rubicon indicated it would provide a response the following week, but it still has not provided one over three months later.

Since Rubicon refused to respond, Plaintiffs issued RFAs to seek information on which claim terms are disputed. Rubicon's responses to RFAs 5-6, 8, 10, 14-17, 21, 23-27, 30, and 32-34 completely evade the infringement issue, despite Rubicon's late supplement to Nos. 7, 9, 11, 12, 13, 22, and 29. Nos. 5-6, 8, 10, 14-17, 21, 23-27 seek admissions regarding specific elements of the asserted claims so that Plaintiffs can ascertain what aspects of the claims are in dispute for infringement purposes. Many of them do not involve claim terms that are being construed. All are directed in some way to infringement issues and most cite a Rubicon document that Plaintiffs believe contains a claim element in question. Rubicon's response to each simply quotes the cited document (or some other document, where the RFA does not cite anything). That is, rather than admitting or denying the text of each request, Rubicon admitted something else.

As an example, RFA 5 asks Rubicon to admit that "propranolol hydrochloride is a pharmaceutically acceptable salt form of propranolol when used in Rubicon's Proposed Product." (Exhibit B at 10). Rubicon's response admits that a related document states "Propranolol Hydrochloride oral solution contains the beta-adrenergic blocker propranolol hydrochloride and is indicated for the treatment of proliferating infantile hemangioma requiring systemic therapy." (*Id*.). While the quoted statement is correct, Rubicon's response does not fairly respond to the request or inform Plaintiffs what aspects of the claims are in dispute.

Responses that deflect to other documents instead of the request itself are improper "word games." *Liafail, Inc. v. Learning 2000, Inc.*, No. 01-cv-678 GMS, 2003 U.S. Dist. LEXIS 3545, at *6 (D. Del. Mar. 3, 2003). Likewise, it is not proper to claim, as Rubicon essentially has done, that "documents speak for themselves." *Doe v. Mercy Health Corp.*, No. 92-cv-6712, 1993 U.S. Dist. LEXIS 13347, at *36 (E.D. Pa. Sep. 13, 1993).

Instead, a response must admit or deny the RFA "as phrased." *Rowe v. E.I. duPont de Nemours & Co.*, No. 06-cv-1810-RMB-AMD, 2008 U.S. Dist. LEXIS 81053, at *12 (D.N.J. Sep. 30,

2008).  And it should begin with "admitted" or "denied."  *See Swarthmore Radiation Oncology v. Lapes*, No. 92-cv-3055, 1993 U.S. Dist. LEXIS 16409, at *3 (E.D. Pa. Nov. 8, 1993).

Rubicon's responses fall well short of this standard.  The requests as written stand unanswered.  Rubicon's continued refusal to acknowledge that it does not contest the presence of these simple claim elements should be put to an end so that the parties can focus on actual disputes.  These refusals are particularly striking given that Rubicon has admitted its proposed product is bioequivalent to Plaintiffs' Hemangeol and has the same labeling as Hemangeol.  (*See* Exhibit A at 12).

Rubicon's refusals have hampered Plaintiffs' ability to address claim construction.  Two claim terms are disputed.  When the parties conferred on April 7 over filing the Joint Claim Chart (D.I. 46), Rubicon indicated supplemental responses on the noninfringement interrogatory would follow that week, but again it backed out.  Suddenly, it claimed that Plaintiffs' desire to construe certain claim terms necessitated a revision to Plaintiffs' infringement contentions.  But on April 20, Plaintiffs indicated that the original infringement contentions are consistent with their proposed constructions and no revisions were necessary.[3]  Rubicon has since dropped that justification but still refused to provide noninfringement positions until after the present Motion was filed (on May 23 – *see* D.I. 56).

In sum, Rubicon's initial discovery responses were due over six months ago (D.I. 33) and since that time, it repeatedly refused to spell out its basis for the noninfringement position of its counterclaims.  Not once has Rubicon said the burden is too large or that the response is not relevant.  It simply seeks delay.  Ultimately, Plaintiffs were forced to serve their opening claim construction brief with no idea why Rubicon thinks it does not infringe.

Rubicon finally offered a supplement with the barest of noninfringement bases on May 23, 2025, based on Plaintiffs' claim construction position that it could not have known when it filed its noninfringement counterclaim.  (Exhibit A).  If that is Rubicon's sole basis for arguing noninfringement, then Rubicon had no basis for bringing a noninfringement counterclaim with its answer.  Nevertheless, Plaintiffs will accept that single noninfringement basis, and Rubicon should be held to that.  But its simple response is one that could have been served weeks ago, if not months ago.  Plaintiffs should not have had to bring a Motion to receive such a short supplement.

The same is true of interrogatory 3, which seeks information on whether Rubicon's proposed product is different from or has a different intended use than Plaintiffs' patented method and FDA-licensed drug.  Rubicon's initial response was essentially that Plaintiffs could figure it out from the documents Rubicon would eventually produce.  (Exhibit A at 11).  Rubicon ignored all follow-ups, as explained above.  On the May 9 meet-and-confer that precipitated this motion, Rubicon's counsel indicated the response to this interrogatory could be easily provided the following week.  But again, its promise was illusory.  No response was given until over two weeks later, after this Motion was filed.  And once again, its response (a mere four

---

[3] In fact, Plaintiffs' claim construction proposals stem from Rubicon's use of invalidity references that (a) treat conditions other than hemangiomas, and/or (b) show the use of beta blockers on patients for some other purpose.

sentences of substance) is something that should have been provided months ago, not only after Plaintiffs filed a Motion.

Interrogatory 4 seeks information on why Rubicon chose to pursue its proposed product. Rubicon's response was simply that it had the capacity and capability to do so, but that does not answer the question asked: why Rubicon chose to act. Rubicon does not claim that it could not provide a full response, it simply will not. The interrogatory is relevant – Rubicon's reasoning could relate to objective indicia of nonobviousness, such as commercial success or praise by others. While Rubicon's initial invalidity contentions do not contain obviousness arguments, it pleaded counterclaims for invalidity under § 103 (D.I. 14 at 20-22). Until it makes an affirmative, binding statement to the contrary, obviousness appears in the pleadings and Plaintiffs do not want to be handcuffed by the addition of such grounds late in discovery.

For these reasons, Plaintiffs respectfully seek the Court's assistance in compelling Rubicon to provide complete, substantive responses on the core issue of this case: whether or not it infringes, and why.

Respectfully submitted,

Keith A. Jones (No. 7011)

cc:     All Counsel of Record (via CM/ECF)